[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13525
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cv-00979-CLS

CHRISTOPHER LAMAR BROWN, SR.,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 27, 2011)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Christopher Brown, Sr., appeals the district court's order affirming the Social Security Administration's denial of his applications for disability benefits and supplemental security income, 42 U.S.C. §§ 405(g), 1383(c)(3). On appeal, Brown argues that the Commissioner's denial of benefits must be reversed because the Administrative Law Judge ("ALJ") improperly drew an adverse inference from the fact that he went without medical treatment for a period of time, and did not consider his explanation for the gap in treatment. Brown also contends that the ALJ failed to explain his finding that Brown's testimony concerning his symptoms was not fully credible. Next, Brown asserts that the ALJ's hypothetical questions to a Vocational Expert ("VE") failed to include all of his impairments. Finally, Brown asserts that the district court erred by denying his motion for a remand based on new medical evidence. For the reasons stated below, we affirm.

I.

Brown applied for a period of disability, disability insurance benefits, and supplemental security income. After his applications were denied, he requested and was granted a hearing before an ALJ. At the hearing, Brown explained that he suffered from severe pain in his back that rendered him unable to work. He did not suffer any injury to his back; rather, it just started to hurt. In 2003, Brown was diagnosed with a herniated disc. He had difficulty sitting, standing, or laying

2

down for extended periods. Although he had been prescribed pain medications, they did not significantly reduce his pain. Regarding his daily activities, Brown testified that he did no yard work or household chores. He accompanied his wife when she went to the grocery store, and was able to unload light items from the car afterwards. Brown explained that he did not have health insurance, and that neither he nor his wife earned an income.

The ALJ posed a series of hypothetical questions to a VE. The first hypothetical asked the VE to assume an individual with Brown's age, education, and work experience. The hypothetical individual would be able to perform a range of light work, with occasional lifting and carrying of no more than 20 pounds, and frequent lifting and carrying of no more than 10 pounds. In addition, the ALJ specified that the hypothetical individual would not be able to climb ropes, ladders, or scaffolding, and would not be able to work at unprotected heights or around dangerous machinery. The VE testified that the hypothetical individual would be able to perform jobs that existed in the national economy, such as bench assembler, garment sorter, and inspector. In response to additional questions, the VE stated that Brown would be unable to perform any work if his testimony regarding the extent and limiting effects of his back pain were to be considered fully credible.

The medical evidence reflected that Brown was first treated for back pain in 2003. An MRI of Brown's spine taken in February 2003 revealed a disc herniation that slightly impinged on a nerve root. Brown was given medication and epidural injections to treat the pain and underwent physical therapy. By July 2003, his symptoms were relatively stable, and he did not have significant pain in his legs or back. In 2006, Brown underwent a second MRI that revealed mild disc protrusions and multiple levels of spondylosis. Brown was prescribed medication but was not deemed to be a candidate for surgery. Between November 2006 and May 2007, Brown received medication, epidural injections, and facet injections, but these ultimately were ineffective in treating his pain. A November 2007 MRI of Brown's lumbar spine revealed some lateral recess stenosis, but the stenosis was not as severe as expected and did not appear to have progressed since Brown's 2006 MRI. The doctor concluded that Brown was neurologically intact, and advised a course of observation rather than surgery.

In May 2008, Brown was seen by a consultative examiner, Dr. Younus Ismail. Dr. Ismail observed that Brown had a decreased range of motion and prescribed medication. Dr. Ismail opined that Brown would not be able to stand or walk for more than one hour at a time, or two hours total, in an eight-hour workday. In addition, he explained that Brown could sit for no more than two

hours at a time, or four hours in an eight-hour workday. Dr. Ismail indicated that Brown would be able to lift and carry 15 pounds frequently, and 20 pounds occasionally. He also noted that Brown could only occasionally climb, balance, stoop, kneel, crouch, or crawl.

In October 2008, the ALJ issued a written decision denying Brown's applications for disability benefits and supplemental security income. The ALJ determined that Brown suffered from two severe impairments, a herniated disc and a single kidney, but concluded that neither of those impairments met or equaled a listed impairment. The ALJ determined that Brown had the residual functional capacity ("RFC") to perform light work, with unlimited pushing or pulling. The ALJ found that Brown could occasionally lift or carry no more 20 pounds and could only occasionally climb ropes, ladders, or scaffolding.

The ALJ explained that Brown's testimony concerning the nature, intensity, persistence, and limiting effects of his symptoms was not credible to the extent that it was inconsistent with the RFC assessment. The ALJ summarized the medical evidence in the record and concluded that it did not support the level of limitation that Brown had described in his hearing testimony. While describing the medical evidence, the ALJ noted that Brown did not seek treatment between November 2007 and May 2008. The ALJ explained that he had given

considerable weight to the opinion of Dr. Ismail, who concluded that Brown was limited to occasional lifting of no more than 20 pounds, but who did not observe any other significant limitations that affected Brown's ability to work.

After the Appeals Council denied review, Brown filed a complaint seeking review in the district court. Brown also moved the district court to remand his case to the agency for consideration of new evidence. In support of his motion, Brown submitted a psychological evaluation conducted by Dr. David R. Wilson in November 2009. Dr. Wilson observed that Brown appeared to be suffering from back pain, arthritis, and fibromyalgia. He also diagnosed Brown with major depression, recurrent. He concluded that Brown's depression was "to such a degree that it would made it difficult for him to work at this time." Given Brown's physical and psychological symptoms, Dr. Wilson concluded that it was "highly unlikely" that Brown could "function on a regular basis in a work environment."

The district court affirmed the Commissioner's decision. The court also denied Brown's motion for a remand. The court concluded that Dr. Wilson's report was not material because it likely would not have altered the ALJ's conclusion that Brown was not disabled. The court observed that Dr. Wilson's statements regarding Brown's physical condition were entitled to little weight because Dr. Wilson was a psychologist, not a physician. The court also noted that

6

Dr. Wilson's conclusory statements that Brown suffered from depression would not support a finding that Brown had a disabling mental impairment.

## II.

In a Social Security case, we review the Commissioner's factual findings to determine whether they are supported by substantial evidence. *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In reviewing the Commissioner's decision, we do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.*

The Social Security regulations establish a five-step sequential process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Under the first two steps, the claimant must demonstrate that he has not engaged in substantial gainful activity and has a severe impairment or combination of impairments. *Id.* Under the third step, if the claimant can prove that his impairment meets or equals a listed impairment, he is automatically found to be disabled. *Id.* Otherwise, the claimant must move to the fourth step and

prove that he is not able to perform his past relevant work. *Id.* If the claimant makes that showing, the burden shifts to the Commissioner under the fifth step to demonstrate that the claimant can perform other work available in the national economy. *Id.*

If a claimant offers subjective testimony concerning disabling pain or other symptoms, the ALJ must determine whether that testimony is credible. *Cf. Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (explaining that a claimant's subjective testimony must be accepted as true unless the ALJ "articulate[s] explicit and adequate reasons" for rejecting it). One factor that the ALJ may consider is the level of treatment sought by the claimant. Social Security Regulation (S.S.R.) 96-7p at 7. However, the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment. *Id.*

We have held that a claimant's poverty can excuse his noncompliance with medical treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). Therefore, before denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Nevertheless, if the claimant's failure to follow medical treatment is not

one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error. *See id.* (holding that ALJ's failure to consider claimant's ability to pay was not reversible error because the ALJ's decision primarily was based on factors other than the claimant's failure to obtain medical treatment).

In this case, even if we were to accept Brown's interpretation that the ALJ drew an adverse inference from the fact that he did not seek treatment between November 2007 and May 2008, Brown has not shown reversible error. The main reason why the ALJ discredited Brown's testimony was that his assertions of disabling pain were not supported by the medical evidence in the record, which described a relatively conservative pattern of treatment. Because the gap in medical treatment did not play a major role in the ALJ's decision, any error in considering that gap in treatment was harmless. *See Ellison*, 355 F.3d at 1275.

### III.

As noted above, we review the Commissioner's factual findings to determine whether they are supported by substantial evidence. *Ingram*, 496 F.3d at 1260. In a case where a claimant attempts to establish disability through her own testimony concerning pain or other subjective systems, we apply a three-part "pain standard." *Holt,* 921 F.2d at 1223. "The pain standard requires (1) evidence

of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* If the ALJ decides not to credit a claimant's subjective testimony concerning pain, "he must articulate explicit and adequate reasons for doing so." *Id.* We have held an ALJ's reasoning to be insufficient where the ALJ simply stated, without further elaboration, that the claimant's testimony "was not credible to the extent alleged," and did not give any reasons supporting that conclusion. *See Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986).

In this case, the ALJ explained that Brown's description of the intensity, persistence, and limiting effects of his symptoms was not supported by the medical evidence in the record. The ALJ noted that Brown's initial examination revealed no significant neurological impairment and that he received relatively conservative medical treatment. The ALJ also noted that the consultative examiner, Dr. Ismail, concluded that Brown did not have significant limitations in his functioning or his ability to sustain an eight-hour work day. We conclude that the ALJ offered sufficient reasons to support his determination that Brown's testimony was not fully credible.

IV.

As noted above, under the fifth step in the disability process, the ALJ must consider whether the claimant is able to perform other work that exists in the national economy. *Jones*, 190 F.3d at 1228. One way in which the ALJ may make that determination is by posing hypothetical questions to a VE. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* The hypothetical question need not include claimed impairments that are not supported by the medical evidence. *Ingram*, 496 F.3d at 1270.

Here, the ALJ's first hypothetical question covered all of the limitations in the ALJ's RFC assessment. The ALJ did not have to include Brown's assertions of completely disabling back pain in the hypothetical because the ALJ concluded that the medical evidence did not support that level of restriction. *Ingram*, 496 F.3d at 1270. Because the ALJ's first hypothetical question to the VE included all of the impairments that the ALJ found to be supported by the record, the ALJ's step five findings are supported by substantial evidence. *See Wilson*, 284 F.3d at 1227.

V.

A district court's denial of a motion to remand is reviewed *de novo*.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001).  The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable.  42 U.S.C. § 405(g).  To demonstrate that a remand is needed under sentence six, the claimant must establish that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In this case, it is unlikely that Dr. Wilson's report would have altered the ALJ's conclusion that Brown was not disabled.  Even assuming that the report was relevant to the time period under consideration, Dr. Wilson's findings did not establish that Brown was disabled.  To the extent that Dr. Wilson concluded that Brown was unable to work because of physical problems, his opinion was entitled to little weight because he was a psychologist rather than a physician.  *See* 20 C.F.R. § 404.1527(d)(5) (explaining that the doctor's specialization is one of the factors to be considered in determining the weight to be given to a medical opinion).  Also, Brown did not submit any other medical evidence showing that he

12

suffered from depression or had sought or received treatment for psychological symptoms. Given the lack of corroborating evidence in the record, it appears unlikely that the ALJ would have accepted Dr. Wilson's conclusion that Brown suffered from major depression that rendered him unable to work. Because there was no reasonable possibility that Dr. Wilson's report would have changed the administrative outcome, the district court properly concluded that the report was not material.

Accordingly, after review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**