[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15565
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cv-01907-LSC

JEFFREY BEEGLE,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 23, 2012)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Jeffrey Beegle appeals the administrative law judge's ("ALJ") denial of disability insurance benefits under Titles II and XVIII of the Social Security Act. Although the ALJ found that Beegle suffered from the severe impairments of osteoarthritis in his right knee and carpal tunnel syndrome, the ALJ also found that Beegle was not disabled because he did not suffer from a severe mental impairment on account of his depression, and because, despite Beegle's impairments, a significant number of jobs existed in the national economy that he could perform.  On appeal, Beegle argues that: (1) substantial evidence does not support the ALJ's finding that he did not suffer from a severe mental impairment on account of his depression; and (2) substantial evidence does not support the ALJ's finding that a significant number of jobs existed in the national economy that he could perform. After careful review, we affirm.

In a Social Security appeal, we must determine whether the ALJ's decision is supported by substantial evidence and based upon proper legal standards.  See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  Substantial evidence requires more than a scintilla of evidence, and is such relevant evidence as a reasonable person would accept as sufficient to support a conclusion.  Id.  We do not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the ALJ.  Id.  Rather, so long as it is supported by substantial evidence, we

must defer to the ALJ's decision even if the evidence may preponderate against it. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).

Eligibility for disability insurance benefits requires that the claimant is under a disability. 42 U.S.C. § 423(a)(1)(E). In relevant part, a claimant is under a disability if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. Id. § 423(d)(1)(A). The claimant bears the burden of proving his disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

In order to determine whether a claimant is disabled, the Social Security Administration ("SSA") applies a 5-step sequential evaluation. 20 C.F.R. § 404.1520(a). This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience. Id. § 404.1520(a)(4).

3

A person who does not have a severe impairment is not disabled. 20 C.F.R. § 404.1520(c). A severe impairment is an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. See id. § 404.1521(a). Regulations define basic work activities as the abilities and aptitudes necessary to do most jobs. Id. § 404.1521(b). In analyzing step two of the disability test, the SSA considers the claimant's: (1) physical functionality, such as his ability to walk, stand, sit, lift, push, pull, reach, carry, and handle; (2) capacity for seeing, hearing, and speaking; (3) ability to understand, carry out, and remember simple instructions; (4) ability to use judgment; (5) ability to respond appropriately to supervision, coworkers, and usual work situations; and (6) ability to deal with changes in a routine work setting. Id. Only claims based on the most trivial impairments may be rejected, and an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant only needs to show that his impairment is not so slight and its effect not so minimal. Id.

When evaluating whether a claimant suffers from a severe mental impairment, the SSA considers how the impairment affects four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4)

episodes of decompression.  20 C.F.R. § 404.1520a(c)(3).  Where the degree of the claimant's limitation is rated as "none" or "mild" in the first three functional areas, and as "none" in the fourth functional area, the SSA generally concludes that the claimant does not suffer from a severe mental impairment.  Id. § 404.1520a(d)(1).

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment.  See id. § 404.1527(a)(2).  The SSA considers several factors when determining the proper weight to assign to a medical opinion, including whether: (1) the physician examined the claimant; (2) the physician treated the claimant; (3) relevant evidence supports the medical opinion; (4) the opinion is consistent with the record as a whole; (5) the physician provided an opinion in his area of specialty; and (6) other relevant factors exist that tend to support or contradict the medical opinion.  Id. § 404.1527(c).  A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.  Id. § 404.1527(d)(2).

A treating physician's opinion must be given substantial or considerable weight unless "good cause" is shown to the contrary.  Winschel, 631 F.3d at 1179; see also 20 C.F.R. § 404.1527(c)(2) ("[g]enerally, we give more weight to opinions from your

treating sources . . .").  The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).  In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

Upon considering medical opinions, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  Winschel, 631 F.3d at 1179.  Otherwise, it is impossible for us to determine whether substantial evidence supports the ALJ's decision, and we will not affirm simply because some rationale might have supported the ALJ's conclusion.  See id.

At the fifth step of the disability analysis, the Commissioner bears the burden of showing that, in light of the claimant's residual functional capacity and other factors, there exist in the national economy a significant number of jobs that the claimant can perform.  Winschel, 631 F.3d at 1180; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).  If such jobs exist, then the claimant is not disabled.  See 20 C.F.R. § 404.1520(a)(4)(v).  An ALJ may make this determination by posing hypothetical questions to a vocational expert.  See Winschel, 631 F.3d at 1180.  A vocational expert's testimony, however, will only constitute substantial evidence if the ALJ's hypothetical question includes all of the claimant's

6

impairments.  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  A hypothetical question may be adequate where it implicitly accounts for the claimant's limitations.  See Winschel, 631 F.3d at 1180-81.  An ALJ is not required to include findings in a hypothetical question that the ALJ properly rejected as unsupported.  See Crawford, 363 F.3d at 1161.  Likewise, the ALJ may disregard an answer to a hypothetical question where she finds that elements of the hypothetical question are unsupported by the record.  See Graham v. Bowen, 790 F.2d 1572, 1576 (11th Cir. 1986).

When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.  See Social Security Regulation ("S.S.R.") 96-7p at 7.  Nonetheless, the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment.  Id.  Thus, the ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care.  See Ellison, 355 F.3d at 1275.  Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's

non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits. See id. at 1275-76.

In this case, substantial evidence supports the ALJ's finding that Beegle did not suffer from a severe mental impairment on account of his depression, but rather, had mild impairments in his activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation of extended duration. As for Beegle's daily living activities, record evidence showed that Beegle lived alone, could take care of his personal needs without assistance, cleaned up around the house, took care of his son on the weekend, did his laundry, and took some responsibility for his finances. As for his social functioning, Beegle hunted and fished if someone else went with him, talked on the phone with others several times per day, and got along well with others. Beegle also reported to Dr. Robert Storjohann, who had met with Beegle and submitted a report on Beegle's mental health, that he got along well with his parents and had regular contact and a good relationship with two of his siblings. As for his concentration, persistence, and pace, Beegle did not require reminders to take care of his personal needs, or encouragement to perform household chores. He also managed his finances. Finally, no evidence in the record supports a finding that Beegle suffered from episodes of decompensation, and the opinions of Dr. Storjohann as well as medical expert Dr. Doug McKeown

8

both support a finding that Beegle did not suffer from episodes of decompensation. As a result, substantial evidence supports the ALJ's findings regarding Beegle's limitations in the four relevant functional areas, and her ultimate conclusion that Beegle did not suffer from a severe mental impairment on account of his depression. See 20 C.F.R. § 404.1520a(c)(3), (d)(1).

To the extent Beegle argues that the ALJ improperly substituted her own medical opinion for that of Dr. Storjohann, substantial evidence supports the weight that she assigned to the opinion. As a physician who only examined Beegle on a single occasion and did not treat him, the ALJ was not required to defer to Dr. Storjohann's opinion. See McSwain, 814 F.2d at 619. Moreover, the ALJ was justified in assigning Dr. Storjohann's opinion "little probative weight," as evidence on the record contradicted it. See Sryock, 764 F.2d at 835. For example, despite some contrary representations in Dr. Storjohann's report, Beegle represented to the ALJ that he could manage his finances, talked on the phone with others several times a day, did not have difficulty getting along with others, got along well with his parents, had regular contact and good relationships with two of his siblings, went hunting and fishing when others took him, and did not require reminders or encouragement to take care of his personal needs or complete chores. Likewise, Dr. McKeown testified that Dr. Storjohann administered the Beck Depression Inventory,

9

but that the test was not a diagnostic tool, and that, in his opinion, Dr. Storjohann overstated Beegle's residual functional capacity assessment. In any event, the ALJ did not have to defer to Dr. Storjohann's residual functional capacity assessment, which appears to suggest that Beegle's depression constituted a severe mental impairment, since it spoke to a matter that was reserved for the ALJ's own determination. See 20 C.F.R. § 404.1527(d)(2).

As for Beegle's claim that the ALJ failed to explain her decision assigning "little probative weight" to Dr. Storjohann's opinion, the record demonstrates otherwise. In support of her finding, the ALJ explained that elements of Dr. Storjohann's report conflicted with Beegle's previous representations to the SSA and with Beegle's activities, Dr. McKeown's testimony cast doubt upon Dr. Storjohann's opinion, and Beegle had not alleged, or sought treatment for, mental health issues. As for Beegle's argument that the ALJ improperly drew an adverse inference against him when she noted that no evidence established that he sought mental health treatment, Beegle's failure to seek mental health treatment was not the primary or significant basis for the ALJ's decision, and, as a result, any inference that the ALJ improperly drew from Beegle's failure to seek treatment did not constitute reversible error. See Ellison, 355 F.3d at 1275-76. Accordingly, substantial evidence supports the ALJ's finding that Beegle did not suffer from a severe mental impairment on

10

account of his depression, and thus that Beegle was not disabled because of his depression.  See 20 C.F.R. § 404.1520(c).

Likewise, substantial evidence supports the ALJ's finding that a significant number of jobs existed in the national economy that Beegle could perform.  As for Beegle's claim that the ALJ improperly substituted her own medical judgment for that of Dr. C.K. Jin, a hematologist and practitioner of internal medicine, when she determined his residual functional capacity, we are unpersuaded.  For starters, the ALJ only rejected Dr. Jin's opinion to the extent he spoke to Beegle's right knee ailments, but she relied upon that opinion, in part, in support of her findings regarding Beegle's left knee pain and carpal tunnel syndrome.  Moreover, the ALJ was not required to defer to Dr. Jin's opinion because he only examined Beegle on a single occasion and did not treat him.  See McSwain, 814 F.2d at 619.  Furthermore, the ALJ was entitled to rely on the opinion of Dr. Gordon Hardy over that of Dr. Jin to the extent that they conflicted because Dr. Hardy treated Beegle's knee problems, and Dr. Jin was not an orthopedist.  See 20 C.F.R. § 404.1527(c)(2), (5).  To the extent that Beegle argues that the ALJ inadequately explained her decision discounting Dr. Jin's opinion, the ALJ specifically said that she assigned it "very little weight," and explained that she did so because he was not an orthopedist and that Dr. Hardy was

11

Beegle's treating physician.  Thus, the ALJ offered a sufficient explanation of her decision.  See Winschel, 631 F.3d at 1179.

Additionally, Beegle argues that the ALJ drew an improper adverse inference against him when, in support of her rejection of his claim that he could not work because of his right knee pain, she considered that Beegle: (1) did not take prescription drugs; (2) did not seek treatment from any physician other than Dr. Hardy from October 2006 to April 2008; and (3) did not seek treatment after April 2008.  However, the record reflects that the ALJ largely based her findings on Dr. Hardy's opinions, not Beegle's lack of treatment.  Beegle also claims that the ALJ drew an improper adverse inference when, in finding that he was not disabled because of his left knee pain or carpal tunnel syndrome, the ALJ cited the fact that he had not sought treatment for his left knee pain or carpal tunnel syndrome.  However, the record further shows that the ALJ primarily based her findings on Dr. Jin's report and evidence of Beegle's activities that contradicted his claim.  Accordingly, any adverse inferences that the ALJ may have improperly drawn from Beegle's lack of treatment did not constitute a primary or significant basis for the ALJ's findings, and do not constitute reversible error.  See Ellison, 355 F.3d at 1275-76.

Beegle next argues that the ALJ presented insufficient hypothetical questions to Randal McDaniel, a vocational expert.  But two of the hypothetical questions that

12

the ALJ presented accounted for the limitations that the ALJ found were supported by the record -- and in fact, were supported by Dr. McKeown's testimony and the report of Dr. Hampton Smith.  McDaniel testified that a hypothetical claimant with these limitations could perform a significant number of jobs that existed in the economy.  While, as Beegle points out, McDaniel testified that a hypothetical claimant could not perform Beegle's past work if the ALJ assumed the limitations set forth in Dr. Storjohann's report, we've already concluded that substantial evidence supports the ALJ's rejection of Dr. Storjohann's opinion.  Consequently, the ALJ did not need to rely upon McDaniel's answer to this hypothetical question because elements of that hypothetical question were unsupported by the record.  See Graham, 790 F.2d at 1576.

Further, although Beegle is correct in his argument that the ALJ's hypothetical questions did not explicitly account for his right knee pain, they implicitly did so.  As the record shows, the ALJ expressly relied upon the limitations set forth in Dr. Smith's report, which specified a number of limitations based upon Beegle's right knee ailments.  In turn, Dr. Smith relied upon, in part, Beegle's persistent pain in his right knee.  Beegle has never suggested how the pain in his right knee further limited his ability to work beyond that already provided for in the ALJ's hypothetical questions.  As for the pain caused by Beegle's carpal tunnel syndrome, the ALJ

13

rejected his assertions regarding the limitations of his impairment. Beegle does not challenge the ALJ's findings in this respect, except as we've discussed above, and the ALJ did not have to include findings in her hypothetical that she rejected as unsupported. See Crawford, 363 F.3d at 1161. Accordingly, her hypothetical questions were not incomplete to the extent that they failed to consider Beegle's pain from his carpal tunnel syndrome.

Nor were the ALJ's hypothetical questions incomplete because they omitted any reference to Beegle's fatigue or need to miss work. The only evidence of fatigue on the record was Beegle's testimony that he lacked energy on account of his depression. As we've noted, however, substantial evidence supports the ALJ's finding that Beegle's depression did not constitute a severe mental impairment, and the ALJ did not have to proceed further with her analysis of Beegle's depression. See 20 C.F.R. § 404.1520(a)(4) ("[i]f we can find that you are disabled or not disabled at a step [in the 5-step sequential analysis], we make our determination or decision and we do not go on to the next step"). As for Beegle's need for absences from work, the ALJ specifically questioned McDaniel regarding employers' practices regarding unscheduled absences from work. Beegle has not pointed to any evidence, nor does any appear on the record, showing that he would require more than the 2 unscheduled absences per month that McDaniel testified that employers permitted. In sum, the

14

ALJ presented complete hypothetical questions to McDaniel, and substantial evidence supports her finding that a significant number of jobs existed in the economy that Beegle could perform in light of McDaniel's testimony. See Wilson, 284 F.3d at 1227. Because substantial evidence supports the ALJ's conclusion that Beegle was not disabled, and not entitled to disability insurance benefits, we affirm. See 42 U.S.C. § 423(a)(1)(E), (d)(1)(A); 20 C.F.R. § 404.1520(a)(4)(v), (c).

**AFFIRMED.**