[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 1, 2003
THOMAS K. KAHN
CLERK

No. 03-11754
Non-Argument Calendar

D.C. Docket No. 02-00223-CV-2-GMF-5

NATHAN L. ELLISON,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

Appeal from the United States District Court for the
Middle District of Georgia

(October 1, 2003)

Before DUBINA, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Nathan L. Ellison appeals the district court's order affirming the Social Security Commissioner's denial of his application for supplemental social security income, 42 U.S.C. §§ 405(g), 1383(c). Ellison raises two issues on appeal. First, he argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") finding that Ellison's seizures resulted from noncompliance with medical treatment. Next, Ellison contends that the ALJ erroneously failed to fully develop the record as it pertained to Ellison's seizure disorder. For the reasons set forth more fully below, we affirm the district court's order affirming the Commissioner's decision.

Ellison, a 44-year-old male with a tenth grade education, applied for supplemental social security income on December 14, 1998, alleging an onset date of May 15, 1985, due to "Highblood Seizures, weakness in legs, feet, back problems." His application was denied initially and on reconsideration. Ellison then requested and received a hearing before an ALJ.

During the hearing, Ellison testified that he had run out of medicine and had gone without taking his medication for, at most, one day at a time, and he was able to purchase more medicine after borrowing money from his girlfriend. Ellison further stated that, after having seizures, he had gone to the emergency room at Oconee Regional Medical Center several times in 1999 and 2000. The ALJ then

asked Ellison's representative whether he had requested current medical records from Oconee, and the representative answered "No." The ALJ noted that "it sounds like we're missing a lot more from 2000 and 1999," and he directed Ellison's representative to obtain current medical records and lab reports from Oconee. Two months after the hearing, the ALJ sent Ellison's representative a letter advising that the ALJ had not yet received the medical records at issue and that he would begin working on his decision if he did not hear from the representative within ten days of the date of the letter. Ellison failed to respond to either of the ALJ's requests.

The ALJ eventually made findings in a decision that included the relevant medical evidence and witness testimony. The ALJ discredited Ellison's allegations of disability as inconsistent with the objective medical evidence, noting that Ellison had worked for several years as an automobile detailer despite his impairments, that Ellison's alcohol use aggravated his seizure condition, and that the medical evidence indicated Ellison's noncompliance with treatment. Additionally, the ALJ discredited as inconsistent with the medical evidence the opinion of examining physician Dr. James Baugh, who had opined that Ellison was totally disabled due to his "uncontrolled Epileptic Seizures severe hypertension and other problems."

The ALJ found that Ellison suffered from seizures and hypertension and that he consequently lacked the residual functional capacity ("RFC") to perform any of his past relevant work. The ALJ further found, however, that Ellison retained the RFC to perform heavy work with some restrictions, including work that does not involve heights or heavy, dangerous, or moving machinery. Relying on the medical evidence, and testimony from a vocational expert ("VE") and Ellison, the ALJ found that Ellison was not disabled as defined by the Social Security Act because he was able to perform other work that existed in significant numbers in the national economy.

The Appeals Council denied review of the ALJ's decision. On judicial review, the magistrate judge issued a report recommending that the Commissioner's decision denying benefits be affirmed. Thereafter, the district court entered an order affirming the Commissioner's decision.

Ellison argues on appeal that substantial evidence does not support the ALJ's finding that his seizures resulted from noncompliance with medical treatment. Ellison maintains that the medical evidence refutes the ALJ's finding on this issue, and the ALJ erroneously failed to consider the effect of Ellison's financial condition on his ability to obtain treatment for his seizures. Additionally,

4

Ellison contends that the ALJ erred by discrediting the opinion of examining physician Dr. Baugh.

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

We have held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988). Additionally, when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment. See id. at 1214. The claimant in Dawkins testified at the administrative hearing that she was unable to take her prescribed medication because she could not always afford to refill her prescription. Id. at 1213. In denying benefits, the

ALJ relied "primarily if not exclusively" on evidence pertaining to the claimant's noncompliance with prescribed medical treatment. Id. at 1212. On appeal, we reversed and remanded the case, concluding that, because the ALJ's finding that claimant was not disabled was "inextricably tied to the finding of noncompliance," the ALJ had erred by failing to consider the claimant's ability to afford the prescribed medical treatment. Id. at 1214.

This case is distinguishable from Dawkins because, unlike in Dawkins, the ALJ's determination that Ellison was not disabled was not significantly based on a finding of noncompliance. Although the ALJ, in discrediting Ellison's allegations of disability, noted that the medical record "supports non-compliance on [Ellison's] part," a review of the ALJ's decision reveals that his finding on this issue was based primarily on the facts that (1) Ellison worked for several years in spite of his impairments, and (2) Ellison's use of alcohol aggravated his seizure condition. Moreover, as the ALJ expressly stated, he based his finding of "not disabled" on testimony of a VE and Ellison's RFC, age, educational background, and work experience. Accordingly, Ellison's reliance on Dawkins is misplaced, and the ALJ's failure to consider Ellison's ability to afford his seizure medication does not constitute reversible error. See id. at 1212-14.

Additionally, the ALJ's consideration of Ellison's noncompliance as a factor in discrediting Ellison's allegations of disability is adequately supported by Dr. G. F. Garcia's opinion that "[Ellison's] frequent seizures can be explained because [of] his subtherapeutic level of anticonvulsants, most likely due to his non-compliance." Finally, the fact that Ellison worked for several years in spite of his seizure disorder, and the medical opinions of Drs. Arthur Schiff, Charles Bailey, David Williams, and Janet Rice, which indicate that Ellison's seizure disorder did not prevent him from meeting the demands of unskilled work, constitute substantial evidence to support the ALJ's decision to discredit Dr. Baugh's opinion that Ellison was totally disabled. See Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion").

Next, Ellison argues that the ALJ erroneously failed to fully develop the record as it pertains to his seizure disorder. Ellison concedes that "it is appropriate to initially rely upon his representative, attorney or not, to obtain updated information," but nonetheless maintains that the ALJ was required to obtain medical evidence regarding the two-year period following Ellison's filing of his application for benefits. Additionally, Ellison contends that a remand is necessary because the district court, in affirming the Commissioner's denial of his

application for benefits, mistakenly assumed that Ellison's representative was an attorney.

It is well-established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(d) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"); Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim. See 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled").

Ellison filed his application for supplemental social security income on December 14, 1998, and, thus, the ALJ was required to develop Ellison's medical history for the 12 months prior to December 1998. See 20 C.F.R. § 416.912(d). Ellison makes no claim that the ALJ failed to do this; rather, his focus is on the period after his filing. The ALJ, however, was in no way bound to develop the

medical record for 1999 and 2000, as Ellison contends. Moreover, the record reveals that the ALJ did attempt to develop the medical record by requesting on two occasions that Ellison furnish him with the 1999 and 2000 medical records, but Ellison failed to do so. Thus, Ellison is not entitled to relief on his contention that the ALJ failed to adequately develop the medical record. See 20 C.F.R. § 416.916 (stating that "[w]hen you fail to cooperate with us in obtaining evidence, we will have to make a decision based on the information available in your case").

Finally, Ellison is not entitled to relief on his claim that the district court mistakenly assumed that Ellison's representative was an attorney. This claim arguably is a non-issue in light of Ellison's failure to follow through on the ALJ's explicit instruction to obtain current medical and lab reports from a specific hospital. Ellison, moreover, fails to explain how the district court's alleged mistaken assumption mandates a reversal of the ALJ's decision. Furthermore, to the extent that Ellison maintains that his representative's status as a non-attorney imposed upon the ALJ a heightened duty to fully develop the record, Ellison is not entitled to relief because he does not challenge the qualifications of his representative. See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (stating that "the ALJ's 'basic obligation to develop a full and fair record rises to a

9

special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him'"); 20 C.F.R. § 416.1505 (providing that a claimant may be represented by an attorney or a qualified non-attorney).

Accordingly, we conclude that Ellison's noncompliance with prescribed medical treatment, which the ALJ used as a factor in discrediting his allegations of disability, is supported by substantial evidence. We further conclude that Ellison has failed to demonstrate that the ALJ erroneously failed to develop a full and fair record. We, therefore, affirm.

**AFFIRMED.**