[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14963
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cv-00105-CDL

LISA DENOMME,

                                                            Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 16, 2013)

Before HULL, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Lisa Denomme appeals the district court's order affirming the Social Security Administration's ("SSA") denial of her applications for disability insurance benefits and supplemental security income.  On appeal, Denomme argues that: (1) the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because he failed to state with particularity the weight he accorded certain medical opinions; (2) the ALJ's analysis cannot be clearly inferred from his ultimate findings because the ALJ never articulated his reasons, or the particular weight he assigned to the medical opinions; and (3) the ALJ failed to include all of her limitations, particularly her moderate to severe limitations in interacting with supervisors and coworkers, in the hypothetical questions posed to the vocational expert ("VE").  After careful review, we affirm.

In SSA appeals, we decide whether an ALJ's decision is supported by substantial evidence and based upon proper legal standards.  See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  Substantial evidence requires more than a scintilla of evidence, and is the relevant evidence a reasonable person would accept as sufficient to support a conclusion.  We do not decide facts anew, reweigh the evidence, or substitute our own judgment for that of the ALJ. Id.  Rather, so long as it is supported by substantial evidence, we must defer to the ALJ's decision even if the evidence may preponderate against it.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).

2

Eligibility for disability insurance benefits requires that the claimant is under a disability. 42 U.S.C. § 423(a)(1)(E). In relevant part, a claimant is under a disability if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. Id. § 423(d)(1)(A). The claimant bears the burden of proving her disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

In order to determine whether a claimant is disabled, the SSA applies a five-step sequential evaluation. 20 C.F.R. § 404.1520(a). This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform her past relevant work, in light of her residual functional capacity ("RFC"); and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience. Id. § 404.1520(a)(4).

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment. See id. § 404.1527(a)(2). The ALJ must consider several factors in determining how much weight to give to each medical opinion, including: (1) whether the doctor has examined the

3

claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization. Id. §§ 404.1527(c), 416.927(c). These factors apply to both examining and nonexamining doctors. Id. §§ 404.1527(e), 416.927(e). Upon considering medical opinions, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. Winschel, 631 F.3d at 1179. Otherwise, we cannot determine whether substantial evidence supports the ALJ's decision, and we will not affirm simply because some rationale might have supported the ALJ's conclusion. See id.

A treating physician's opinion must be given substantial or considerable weight unless "good cause" is shown to the contrary. Id.; see also 20 C.F.R. § 404.1527(c)(2) ("[g]enerally, we give more weight to opinions from your treating sources . . ."). The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). When, however, an incorrect application of the regulations results in harmless error because the correct

4

application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

In addition, the Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.  See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (noting that, a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive).  Specifically, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  Id. §§ 404.1527(d)(1), 416.927(d)(1).

At the fifth step of the disability analysis, the Commissioner bears the burden of showing that, in light of the claimant's RFC and other factors, there exist in the national economy a significant number of jobs that the claimant can perform.  Winschel, 631 F.3d at 1180; 20 C.F.R. § 404.1520(a)(4)(v).  If such jobs exist, then the claimant is not disabled.  See 20 C.F.R. § 404.1520(a)(4)(v).  An ALJ may make this determination by posing hypothetical questions to a vocational expert.  See Winschel, 631 F.3d at 1180.  A vocational expert's testimony, however, will only constitute substantial evidence if the ALJ's hypothetical question includes all of the claimant's impairments.  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir.

5

2002).  An ALJ is not required to include findings in a hypothetical question that the ALJ properly rejected as unsupported.  See Crawford, 363 F.3d at 1161.

Here, substantial evidence supports the ALJ's decision that Denomme was not disabled.  For starters, the ALJ explicitly declined to extend significant weight to Dr. Amin's and Dr. Patel's assessments and treatment records because they were inconsistent with the overall evidence in the record, particularly the physical and neurological examinations.  By contrast, the ALJ did not state with particularity the weight given to the opinions of Dr. Vrochopoulos and the state-agency psychological consultant, Dr. Payne-Gair, but neither did the ALJ discredit nor explicitly indicate that he afforded these reports less weight, and neither examiner was Denomme's treating physician.  See Lewis v. Callahan, 125 F.3d 1436, 1440 (1997) ("[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error").

In any event, even assuming that the ALJ erred by failing to specify the weight given to these examiners' assessments, any potential error was harmless. First, the ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.  See McSwain, 814 F.2d at 619.  Further, the ALJ did credit the specific findings of both Dr. Vrochopoulos and Dr. Payne-Gair concerning Denomme's limitations, as evidenced by the ALJ's ultimate findings.  Indeed, in his RFC

assessment, the ALJ included limitations on Denomme's contact with the public, as outlined by both Dr. Vrochopoulos and Dr. Payne-Gair. While Dr. Vrochopouos generally opined that if untreated, Denomme's condition would likely prevent her from maintaining gainful employment, this was not a medical assessment, but simply an opinion on an issue reserved to the Commissioner's discretion. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Denomme highlights that the ALJ failed to say that Dr. Payne-Gair explicitly noted that Denomme had moderate limitations in her ability to respond appropriately to supervisors or relate to coworkers. But Denomme omits the fact that Dr. Payne-Gair also opined, in assessing limitations on Denomme's social interactions, that Denomme "would respond best to reduced social demand," but had no significant limitations.

The ALJ also considered the medical evidence in the record in formulating Denomme's RFC. See Sryock, 764 F.2d at 835. Specifically, the ALJ highlighted that Denomme's own hearing testimony indicated that she left her last job due to her need for surgery to treat a jaw infection, as opposed to any symptoms from her multiple sclerosis ("MS") or her alleged depression. Concerning Denomme's mental RFC, the ALJ accepted Denomme's claim that she was scared to be around people, even though she testified that her depression symptoms improved with medications, and the record illustrated that Denomme had been prescribed multiple antidepressant medications over the years to successfully manage her depression.

As a result, even if the ALJ erred by failing to specify the weight he gave to Dr. Vrochopoulos's and Dr. Payne-Gair's opinions, any error was harmless.

Similarly, the ALJ's hypothetical questions were not incomplete. After determining that Denomme was unable to perform a full range of sedentary work activity, the ALJ properly obtained testimony from a vocational expert ("VE"). Winschel, 631 F.3d at 1180. The ALJ then posed to the VE a series of hypothetical questions, in which he asked the VE to assume that an individual of Denomme's age, education, and work experience was capable of performing sedentary work with additional nonexertional limitations, including that "there would be only occasional contact with the general public." Although Demomme alleges that the hypothetical questions to the VE were defective since they did not include limitations on contact with coworkers or supervisors, an ALJ is not required to instruct the VE to assume conditions that he does not find to exist. See Crawford, 363 F.3d at 1161.

As we've discussed, the ALJ properly included a limitation on contact with the public in Denomme's RFC based on Dr. Vrochopoulos's and Dr. Payne-Gair's assessments that Denomme would respond best to reduced social demand, as well as Denomme's testimony that she feared the public. On cross-examination, Denomme's representative asked the VE whether Denomme would be able to perform any of the identified jobs if she had to elevate her legs or if her attention

8

and concentration were markedly limited due to pain.  However, Denomme's representative failed to ask whether her ability to perform these jobs would be compromised by limitations in interacting with coworkers and supervisors, and he posed no other mental limitations questions to the VE.  See also Allen v. Schweiker, 642 F.2d 799, 802 (5th Cir. 1981) (where a disability claimant is represented before the agency, her representative has the power to present supporting evidence and challenge the testimony of the VE).[1]  Accordingly, the ALJ presented complete hypothetical questions to the VE, and substantial evidence supports the finding that a significant number of jobs existed in the economy that Denomme could perform in light of the VE's testimony.

In sum, substantial evidence supports the ALJ's findings that Denomme retained the RFC to perform a reduced range of sedentary work, and that a significant number of jobs existed in the national economy for Denomme despite her limitations with interacting with the public.

**AFFIRMED.**

---

[1]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

9