[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12511
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-03494-AKK


T R C,
through her mother and next friend, Towana Boyd,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 28, 2014)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

T.R.C., a minor, by and through her mother and next friend, Towana Boyd, appeals the district court's order affirming the Social Security Administration's denial of her application for child's supplemental security income pursuant to 42 U.S.C. § 1383(c)(3). The administrative law judge determined that T.R.C. was not disabled, and denied the claim. The ALJ found that, although T.R.C.'s borderline intellectual functioning and learning disorder were severe impairments, they did not meet, medically equal, or functionally equal one of the listed impairments. The Appeals Council denied review, and the district court affirmed. This appeal followed.

On appeal, T.R.C., through Ms. Boyd, argues that (1) the ALJ improperly accorded weight to certain evidence; (2) T.R.C. met or equalled the criteria for Listing 112.05, Mental Retardation; and (3) the ALJ failed to fully develop the record.

## I. Weighing of Evidence

T.R.C. argues that substantial evidence does not support the ALJ's decision that she is not disabled. We review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

2

First, T.R.C. contends that the ALJ failed to use proper legal standards and did not show good cause why the opinions of her treating sources, which she alleges to be the University of Alabama-Birmingham Civitan-Sparks Clinic ("UAB") and Marilyn H. Wisely, a psychometrist with Birmingham City Schools, along with her mother's testimony, should not be given substantial or considerable weight.

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179. Absent good cause, the ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Id.* A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided the claimant with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship* with the claimant. 20 C.F.R. § 416.902. Acceptable medical sources include, *inter alia*, licensed physicians, psychologists, and qualified speech-language pathologists. *Id.* § 416.913(a).

Here, we cannot say that the ALJ erred in giving "some" rather than "substantial" weight to the opinions of the examiners at UAC and T.R.C.'s mother, (Ms. Boyd), and "little" weight to Ms. Wisely's opinion. The examiners at UAC and Ms. Wisely met with T.R.C. on only one occasion and did not have any "ongoing treatment relationship" with her sufficient to accord them status as

3

treating physicians.  Thus, the ALJ had discretion to give their opinions less than "substantial or considerable" weight.  Her mother likewise is not a treating physician and so the ALJ had the discretion to use her statements to establish the severity of T.R.C.'s condition, but not to establish the existence of an impairment. *Id.* § 416.913(d)(4) (explaining that the ALJ may use information from "other sources" such as parents to establish the severity of an impairment).  We also cannot say that the ALJ erred in according Ms. Wisely's opinion little weight, because he found that her observations, that T.R.C. was easily frustrated and had trouble reading and completing the tests, did not support her conclusion, that the below average test results nevertheless reflected T.R.C.'s actual abilities.  Not only did the ALJ find this conclusion internally inconsistent, but also in conflict with the opinion of another medical examiner who indicated that T.R.C.'s frustration and marginal test-taking efforts undermined the test results.  *See id.* § 416.920b (stating that, if any record evidence is inconsistent, the ALJ will weigh the relevant evidence to determine disability); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (holding that the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion).

Second, T.R.C. argues that the ALJ erred in relying on the opinions of Dr. Robert Estock, who neither treated nor physically examined her, and Dr. Dan Lowery, who is not an expert on speech and language.  Generally, when

4

considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." *Id.* § 404.1527(c)(3). Moreover, "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." *Id.* In addition, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." *Id.* § 404.1527(c)(4).

Although Dr. Estock was not an examining source, the ALJ was entitled to accord his opinions substantial weight because he provided supporting explanations for them, and the record supported them. Likewise, the ALJ did not err in according some weight to Dr. Lowery's opinion because it supported Dr. Estock's finding and was based on direct observation of T.R.C. during testing evaluations.

## II. Listing 112.05

Next, T.R.C. argues that she meets or functionally equals Listing 112.05, Mental Retardation. She asserts that she functionally meets the listing with a full scale intelligence quotient ("FSIQ") of 71 along with "documented marked

5

restrictions in the areas of speech and language."[1]  She contends that the results from her treating sources show that she has marked limitations in the domains of (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others.

A claimant under the age of 18 is considered disabled if she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that is expected to result in death or has lasted or is expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  The Social Security regulations provide a three-step sequential analysis to determine whether a child is disabled: (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meet, medically equal, or functionally equal the severity of an impairment in the Listing of Impairments.  *See* 20 C.F.R. § 416.924(a).

---

[1] To the extent that T.R.C. argues that her speech impairment is a severe disability separate from her intellectual disabilities, she failed to articulate that argument before the district court.  Thus, we will not consider it for the first time on appeal.  *See Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992) (refusing to consider a party's contentions for the first time on appeal in a Social Security case).  Nonetheless, the ALJ did not ignore the evidence regarding T.R.C.'s speech difficulties, but instead noted that her "speech problems are considered a symptom of her learning disorder, as she has no trouble with articulation or her voice and only has trouble with receptive and expressive language."  This conclusion is supported by substantial record evidence.

To functionally equal an impairment in the List of Impairments, a claimant must have marked limitations in two domains or an extreme limitation in one of the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. *See id.* § 416.926a(b)(1), (d).  A child's limitation is "marked" where it is "more than moderate," but "less than extreme" and "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).

The Listing of Impairments provides that mental retardation[2] is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  20 C.F.R. § 404, Subpt. P, App. 1, Listing 112.05 (2012).  A child is mentally retarded when she satisfies any of the following requirements: (A) a child between the ages of 3 and 18 who meets at least two of the appropriate age-group criteria in paragraph B2 of Listing 112.02; (B) mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;

---

[2] The 2013 version of the Listing of Impairments replaced the term "Mental Retardation" with "Intellectual Disability."  *Compare* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 112.05 (2013) *with id.* (2012).

7

(C) a valid verbal, performance, or full scale IQ of 59 or less; (D) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function; (E) a valid verbal, performance, or full scale IQ of 60 through 70 and, for a child between the ages of 3 and 18, meeting the requirements in at least one of several specified paragraphs of Listing 112.02; or (F) for a child between the ages of 3 and 18, satisfaction of Listing 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.  *Id.*

In her counseled brief, T.R.C. does not specify under which section of Listing 112.05 she qualifies, although it appears that she relies on Listing 112.05(D), because she cites her FSIQ, claims additional marked restrictions, and does not even mention Listing 112.02.  However, Listing 112.05(D) requires an FSIQ of 60 through 70, and T.R.C. incorrectly asserts that she meets the listing based on her FSIQ of 71.  To the extent that T.R.C. makes the general assertion that the ALJ erred in concluding that T.R.C. does not functionally equal Listing 112.05, she fails to develop any arguments demonstrating that the ALJ erred in his conclusions regarding the six domains of functioning.  *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").  Even assuming that T.R.C. has not waived this argument,

8

we find that substantial evidence supports the ALJ's conclusion that T.R.C. exhibited no more than "less than marked" or "no limitation" in each of the six domains.

### III. ALJ's Full Development of the Record

Finally, T.R.C. argues that the ALJ failed to fully develop the record when he failed to: (1) "re-contact the expert who provided the Psychological Evaluation for any question(s) regarding the validity of the IQ score"; and (2) obtain an updated IQ test score.

Generally, an ALJ has "a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, the claimant carries the burden of proving that she is disabled, and, thus, is responsible for producing evidence to support her claim. *Id.* Moreover, the ALJ is not required to order a consultative examination if the record contains sufficient evidence for the ALJ to make an informed decision. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Because T.R.C. did not identify whom the ALJ should have re-contacted regarding the validity of the IQ score, she has waived that argument. *See McClain of Ga., Inc.*, 138 F.3d at 1422. Moreover, it was T.R.C.'s responsibility to provide an updated test score. *See Ellison*, 355 F.3d at 1276. Finally the record contained sufficient evidence including *inter alia*, several medical and other reports from

9

examiners from UAC, Ms. Wisely, Dr. Lowery, Dr. Estock, and another unidentified examiner as well as T.R.C. and her mother's testimony, for the ALJ to make an informed decision. *See Ingram*, 496 F.3d at 1269.

Accordingly, upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**