[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11371
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-00386-RBD-GJK

PAUL T. DELMONTE,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 29, 2014)

Before TJOFLAT, WILLIAM PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

Paul Delmonte appeals an order affirming the denial of his application for

disability benefits. *See* 42 U.S.C. § 405(g). Delmonte argues that the administrative law judge gave insufficient weight to the opinion of his primary gastroenterologist that he was disabled due to gastroparesis between June 1, 2001, and June 30, 2007. Delmonte also challenges, for the first time, the finding that he could work full-time. We affirm.

Good cause supported the decision of the administrative law judge to discount three reports by Dr. Peter Balsam that the severity and frequency of Delmonte's abdominal pain, nausea, and vomiting were disabling. Dr. Balsam's opinions were contrary to Delmonte's life activities and to objective medical evidence. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Dr. Balsam reported in January 1999 that Delmonte "should be considered disabled from his present job" as a drafting engineer because his symptoms were "uncontrollable," but Delmonte remained at his job until June 2001. In the meantime, a radiological exam revealed that Delmonte's small bowel emptied at a normal rate, a CT scan was unremarkable, and a renal ultrasound revealed only renal cysts. Dr. Balsam reported for the second time in August 2001 that Delmonte was "virtually disabled by [his] pain," but in November 2001, Delmonte stated that he was doing well except for a two-week episode of pain and his endoscopy revealed only minor erosions in the antrum of his stomach and his duodenum. Dr. Balsam reported for a third time in November

2

2003 that Delmonte had marked pain and moderate restrictions in his ability to work, but Dr. Balsam was no longer Delmonte's treating physician.  In August 2003, Delmonte saw another gastroenterologist, Dr. Charles Sninsky, who conducted a gastric emptying study in October 2003 and other medical tests, none of which detected any abnormalities to account for Delmonte's symptoms.  Although Dr. Balsam disputed the reliability of Dr. Sninsky's gastric emptying study on the ground that Delmonte was taking Erythromycin, Dr. Balsam had diagnosed Delmonte with gastroparesis based in part on a gastric emptying study he had undergone in 1998 while taking Erythromycin.  And despite Delmonte's allegations that his condition was disabling until June 30, 2007, earlier that year he worked for two months as a substitute teacher in a high school and quit because of elevated blood pressure and anxiety, not because of his gastroparesis.

Good cause also supported the decision of the administrative law judge to discount Dr. Balsam's opinions that Delmonte's symptoms were non-responsive to treatment.  Delmonte was treated by Dr. Balsam in February 2000, and did not return for treatment for a year.  *See Phillips*, 357 F.3d at 1241.  In February 2001, Delmonte complained that he was starting to have severe symptoms, but he admitted that he not taken Prilosec in over a year and had not taken Domperidone for six months.  *See* 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."); *Ellison v.*

3

*Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  One week after the reintroduction of those two drugs along with Erythromycin, Delmonte reported having temporary relief.  Dr. Balsam added Domperidone and Ambien to Delmonte's regimen, and in March 2001, Delmonte reported feeling "much better."  In November 2001, Delmonte told Dr. Balsam that Darvocet helped to alleviate his pain, and Delmonte did not seek further treatment for his condition until August 2003, when he visited Dr. Sninsky.  Delmonte told Dr. Sninsky that he would sometimes go weeks without pain and took Nexium only intermittently.

Substantial evidence supports the finding of the administrative law judge that Delmonte has the residual functional capacity to perform sedentary work. Delmonte alleged that the symptoms and pain caused by his gastroparesis were disabling, but Delmonte testified that he would use the computer when his stomach bothered him, which is consistent with the finding that he was capable of performing his past work at a computer drafting engineering plans.  *See* 20 C.F.R. § 404.1567(a).  Delmonte's condition did not interfere with his ability to work as a substitute teacher, nor did it prevent him from driving his vehicle, going shopping, running errands, preparing meals, or caring for his personal needs.  Although Dr. T. Schmidt and Dr. David Kitay performed residual functional assessments and opined that Delmonte was capable of performing light or medium work, the administrative law judge gave those assessments "limited weight" in the light of

Delmonte's "subjective allegations of pain" and the effects that his condition would have on his stamina.

Delmonte makes two arguments that he failed to present to the district court. First, Delmonte argues that he can perform only part-time instead of full-time sedentary work, but we will not consider an argument raised for the first time on appeal. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Second, Delmonte argues that he is disabled under the medical vocational guidelines in step five of the sequential evaluation, but those guidelines apply only if the administrative law judge determines that a claimant is incapable of performing his past relevant work at step four of the evaluation. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

We **AFFIRM** the denial of Delmonte's application for benefits.

5