[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14609
Non-Argument Calendar

_____

D.C. Docket No. 8:14-cv-00599-PAZ


KENNETH DAVID JACOBUS,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 18, 2016)



Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Kenneth Jacobus appeals the district court's order affirming the final decision of the Social Security Commissioner denying Jacobus's application for supplemental security income benefits and disability insurance benefits.  Jacobus alleges he is disabled due to lower back pain, kidney problems, cataracts, uncontrolled diabetes, fatty liver disease, and cirrhosis of the liver.  The administrative law judge (ALJ) determined Jacobus was not disabled during the relevant period between August 31, 2010 through March 22, 2013.  Jacobus asserts three issues on appeal, which we address in turn.  After review,[1] we affirm the Commissioner's denial of benefits.

## I.  DISCUSSION

### A.  Credibility finding

Jacobus asserts the ALJ failed to articulate valid and adequately supported reasons for discounting his credibility, failed to take into account his financial constraints and aversion to seeking medical treatment, failed to order necessary medical tests to supplement the record, and selectively focused on medical records that indicated improvement in his conditions.  He also points to several factual errors in the ALJ's opinion.

---

[1]  "We review the Commissioner's decision to determine whether it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted).  "Substantial evidence is more than a scintilla, and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (quotation omitted).

As an initial matter, there are a number of factual errors in the ALJ's opinion. First, the ALJ's statement that Jacobus's diabetes was described as being "much better controlled" in October 2011 has no support in the medical records from that month. There is, however, a note in July 2010 indicating Jacobus's diabetes was much better controlled, and another in October 2012 to the same effect. Second, the ALJ stated that, in October 2011, Jacobus's primary complaint was a cough. However, medical records from that month indicate Jacobus complained of liver problems, swelling in his lower extremities, numbness in his feet, chest pain, monofilament loss in his toes, frequent urination, fatigue, weight gain, back pain, joint pain, frequent cough, weakness in both hands for the previous three to four months, worsening blurred vision, walking imbalance, and tingling in his left hand.

Third, the ALJ concluded that Jacobus had "good diabetes control" in February 2012. However, in February 2012, the medical records indicate Jacobus was taking insulin for his diabetes, but the insulin was not working, and, as a result, his blood sugar remained high. The only other medical record from that month noted that Jacobus had "uncontrolled" diabetes. Fourth, the ALJ noted that he was unable to locate a prescription for a nebulizer in the record, despite Jacobus's testimony that he required a nebulizer three times a day. However, the medical records include a prescription for a nebulizer. Finally, the ALJ's

3

conclusion that Jacobus's statement in his 2011 function report that he was taking only aspirin suggested either inaccuracy or noncompliance was incorrect. Presumably, the ALJ was referring to the November 2011 function report, as that is the only one in which he listed only aspirin as a medication. However, the form specifically stated that Jacobus was *not* to list all the medications that he took, but only those causing side effects. Accordingly, the fact that Jacobus listed only aspirin does not suggest either noncompliance or inaccuracy.

Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). The ALJ's factual errors are harmless, as substantial evidence supports the ALJ's determination that Jacobus was not entirely credible. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (explaining credibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence).

First, Jacobus's arguments on appeal belie his assertion the ALJ did not provide reasons for determining he was not credible, since he addresses each specific reason the ALJ provided in his brief, with separate headings, and challenges each one. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (stating if the ALJ discredits the claimant's subjective testimony, the ALJ

4

must articulate explicit and adequate reasons for doing so).  Furthermore, the ALJ explained many of Jacobus's statements about the severity of his problems were inconsistent with the medical evidence, and provided several examples.

Next, contrary to Jacobus's contention the ALJ ignored certain evidence, there is no rigid requirement the ALJ specifically refer to every piece of evidence in the decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude the ALJ considered the claimant's medical condition as a whole.  *See Mitchell*, 771 F.3d at 782.  Jacobus has identified no specific medical progress reports the ALJ failed to address, with the exception of reports documenting his diabetes was uncontrolled.  However, these reports do not indicate a worsening of symptoms, but merely show Jacobus's diabetes was never entirely controlled.  Furthermore, Jacobus admits that, by October 2012, his blood sugar was much better controlled.

The ALJ discussed the medical records from Dr. Jacob, the Children and Community Clinic, and the Crescent Free Clinic.  The ALJ specifically mentioned the records from the Children and Community Health Clinic dated January and February 2012, and the treatment records from October indicated the exams performed were within normal limits.  As to Jacobus's records from the Crescent Community Clinic, the ALJ specifically discussed a number of those treatment notes, as the only medical evidence from March 2012 to October 2012 was from

5

the Crescent Community Clinic.  The medical records include four instances where Jacobus saw Dr. Jacob, and the only diagnoses made at any of those appointments were diabetes and monofilament loss, both of which the ALJ discussed.

Jacobus argues the ALJ failed to properly consider the entire alleged period of disability, instead focusing on the 12 months immediately following his alleged onset date.  Jacobus presented no medical evidence dated after October 2012, or before September 2011.  Consequently, the ALJ did not err by focusing his analysis on that time period, as there was no evidence presented for any other time period.

Additionally, Jacobus has cited no authority supporting a rule that a claimant may excuse a failure to seek treatment or a lack of medical records because he is not a "pill person" and does not wish to seek medical treatment.  *See* 20 C.F.R. §§ 404.1516, 416.916 (stating claimants are not excused from providing medical evidence because they oppose medical examinations, tests, or treatment for personal reasons).  While poverty excuses noncompliance with treatment, Jacobus testified he did not seek treatment both because he could not afford it, and because he did not want it.  *See Ellison*, 355 F.3d at 1275 (stating poverty excuses noncompliance with prescribed medical treatment).  As to treatment before his first medical record in evidence, Jacobus did not testify that he could not afford medical care, but rather that he "didn't want any of that."  Lack of a desire for treatment is

6

not good cause for failure to seek treatment, and so there was no error in the ALJ's consideration of the lack of treatment before September 2011. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267–68 (11th Cir. 2015) (explaining while an ALJ may not draw inferences about an individual's symptoms and their effects from a failure to seek or pursue regular medical treatment without first considering any explanations the individual may provide, if the ALJ considers any good cause explanation for the failure and the ALJ's determination is also based on other factors, then no reversible error exists). The ALJ did not primarily rely on Jacobus's failure to seek treatment in reaching his decision. *See id.* at 1268. Rather, the ALJ extensively discussed the medical evidence of record, and concluded the evidence did not support Jacobus's claim he was disabled.

There is little indication in the record that Jacobus ever sought treatment for his lower back pain, liver and kidney problems, eye problems, or obesity at any of his medical appointments. While there are records that reflect he complained of those problems during medical appointments, most of the notes seem to relate to his diabetes, and do not indicate Jacobus asked the treating physicians for help with those problems. Jacobus claimed his back pain required him to walk with a cane, but only a single medical record, on January 16, 2012, indicates he presented with a cane. Furthermore, after that date, he presented for medical appointments without the cane, and with no indications of any trouble walking. Dr. Rendon and

7

Dr. Mahmaljy both indicated in their reports to the Commissioner that Jacobus required a cane to walk, but neither mentioned a cane in their treatment notes. Relatedly, Jacobus testified he had problems with frequent falls, but there is no indication in his medical records that he mentioned falls to one of his physicians. Lastly, contrary to Jacobus's assertion, the ALJ was not required to order nerve conduction tests, because the burden was on Jacobus to produce evidence in support of his claims. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (explaining while the ALJ has a basic duty to develop a full and fair record, the claimant bears the burden of proving he is disabled, and, consequently, is responsible for producing evidence in support of his claim). Accordingly, there is substantial evidence to support the ALJ's determination that Jacobus's subjective complaints were not entirely credible.[2] *See Mitchell*, 771 F.3d at 782.

*B.  Residual Functional Capacity*

Jacobus next contends the ALJ's residual functional capacity (RFC) formulation is not based on substantial record evidence, and is based on errors of law, including inadequate evaluation of the medical opinion evidence. Jacobus asserts the ALJ improperly rejected the opinions of his treating physicians, Dr. Gabriel Rendon and Dr. G. Mahmaljy. Jacobus contends the ALJ's RFC

---

[2] As to Jacobus's perfunctory argument the ALJ erred by giving great weight to Dr. K. Patel's opinion, it is arguably abandoned. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue). Regardless, the argument is without merit.

assessment was not supported by substantial evidence and did not take into account all of his impairments.

As the ALJ articulated good cause for failing to give Dr. Mahmaljy's and Dr. Rendon's opinions controlling weight—including that both doctor's opinions were contrary to their respective medical records—there was no error.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating the testimony of a treating physician must be given substantial or considerable weight, unless good cause is shown to the contrary); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (explaining where the ALJ clearly articulates specific reasons for failing to give a treating physician's opinion controlling weight, there is no reversible error). Nor was the ALJ required to investigate whether he was missing relevant treatment records from Dr. Mahmaljy, especially where Dr. Mahmaljy's records had been requested and made part of the medical evidence.  *See Ellison*, 355 F.3d at 1276.

Jacobus's argument the ALJ did not take into account any evidence regarding his anxiety, depression, COPD, or need to use a nebulizer is without merit.  Jacobus did not assert those complaints were disabling, and he did not include them in his disability application or his amendment to the application. Regardless, the ALJ did take into account his breathing problems by including as a limitation that he would have to avoid concentrated exposure to odors, fumes dusts, gases, and poor ventilation.

Nor did the ALJ err in failing to account for Jacobus's claimed need to use a cane, as Jacobus only appeared at one medical appointment with a cane, and appeared numerous times after that appointment without a cane and with no noted walking difficulties or gait abnormalities.  Substantial evidence supported the ALJ's RFC assessment, as the medical evidence was largely consistent with the assessment.  20 C.F.R. §§ 404.1545(e), 416.945(e) (providing the ALJ must consider all of a claimant's alleged impairments in determining the claimant's RFC).

*C.  Hypothetical question*

Jacobus contends the ALJ erred by relying on vocational expert testimony furnished in response to an incomplete hypothetical question, because of the errors alleged in the first two issues.  Since there was no error in either issue, his third issue also fails.

## II.  CONCLUSION

Accordingly, we affirm the Commissioner's decision denying Jacobus's application for supplemental security income benefits and disability insurance benefits.

**AFFIRMED.**

10