[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12656
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00529-JEO

ISAAC FLOWERS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 18, 2020)

Before MARTIN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Isaac Flowers appeals the district court's order affirming the denial of his applications for disability insurance benefits and supplemental security income. Flowers argues that the administrative law judge failed to accord proper weight to the opinion of one of his treating physicians. Finding no error, we affirm.

I.

Flowers claims that he has been disabled since he injured his back and neck in a car accident. He says that he is unable to work due to back and neck pain, shoulder problems, and pain in his feet, all arising from his injuries in the accident, and left-eye blindness since birth. Medical records that Flowers submitted in support of his applications for benefits showed that he presented to the hospital on August 9, 2013, reporting that he had been involved in a low-speed head-on collision and complaining of back, neck, and shoulder pain. CT scans taken on the day of the accident showed a normal cervical and lumbar spine. Flowers was diagnosed with a cervical sprain and lumbar spine sprain and released.

Flowers was treated by an orthopedic specialist, who prescribed pain medication, a muscle relaxant, steroids, and physical therapy. Despite this treatment, Flowers continued to report neck and back pain without improvement. MRI imaging of the cervical and lumbar spine taken several weeks after the accident showed mild stenosis at three cervical vertebrae from central disc bulging, minimal to mild foraminal encroachment at sections of the cervical and lumbar

2

spine, and minimal transverse thecal sac narrowing between two vertebrae of the lumbar spine.  The imaging showed no evidence of cervical disc herniation.

Flowers consulted with a neurosurgeon, Dr. James White, who examined him and reviewed his imaging.  Dr. White stated that Flowers's MRI studies showed "some mild stenosis at both levels obviously predating the accident with no evidence of herniation or other surgical pathology" and recommended a referral to pain management.

In October 2014, Dr. Sathyan Iver examined Flowers at the request of the state disability determination service.  Dr. Iyer's examination showed that Flowers had normal gait, grip strength, and muscle power of the arms and legs; full range of motion of the neck, shoulders, elbows, wrists, hips, knees, and ankles; and full mobility of the spine except for some limitation in his lumbar spine flexion.  Dr. Iver diagnosed Flowers with possible degenerative disc disease of the lumbar spine and decreased vision in the left eye since birth.  He opined that these conditions could result in some impairment of functions involving bending, lifting, pushing, pulling, and overhead activities, and some impairment of functions requiring binocular vision such as driving, working at heights, and working around machinery.

Dr. William Hartzog, an orthopedic specialist, examined Flowers on several occasions in late 2016.  Flowers complained of joint pain all over, headaches, neck

pain, and lower back pain that traveled upward into his shoulders and sometimes radiated downward into his legs. Flowers stated that the pain kept him awake at night. On one occasion, Flowers rated his pain as 8 out of 10. Dr. Hartzog noted that on examination, Flowers had no sensory or motor deficits but had some limitation in flexion of his lumbar spine. He diagnosed Flowers with chronic mechanical back pain with probable disc degeneration and prescribed pain medication and home exercises.

In October 2016, Dr. Hartzog filled out a one-page physical capacities form for Flowers, indicating that Flowers could sit upright for three hours at a time and stand for one hour at a time; that he would need to lie down, sleep, or sit with his legs propped up for four to five hours in an eight-hour day; that he would be off task about 40% of the time in an eight-hour work day, in addition to regular breaks; and that he would miss 15 days of work per month—all due to chronic cervical and lumbar strain since 2012. Dr. Hartzog also stated that side effects from Flowers's medications included drowsiness, dizziness, difficulty focusing, and difficulty concentrating.

Dr. Jarrod Warren completed an independent medical evaluation of Flowers in February 2017. Dr. Warren noted that Flowers complained of persistent low back pain and neck pain that had worsened since an accident in August 2013. Dr. Warren stated that Flowers's physical examination was generally unremarkable

except for mild localized tenderness, and he noted that Flowers's description of his low back pain was out of proportion to both his exam findings and the 2013 imaging studies.  Dr. Warren completed a physical capacities form stating that Flowers could sit upright for three hours at a time and stand for one hour at a time; that he would need to lie down, sleep, or sit with his legs propped up for less than 30 minutes in an eight-hour day; that he would be off task about 10% of the time in an eight-hour work day, in addition to regular breaks; and that he would miss five to seven days of work per month due to his chronic low back pain.

At a hearing before the ALJ, Flowers testified that he had constant joint, back, and neck pain that interfered with his daily activities and kept him from working.  He testified that he could sit in a chair for only 15 to 20 minutes at a time before having to get up, that he could not do any household chores due to pain, and that his pain woke him up after four or five hours of sleep every night.  Flowers testified that the pain medication that Dr. Hartzog prescribed for him helped a little bit sometimes, but "not like it should," and the home exercises did not help.

A vocational expert testified that there was no work available in the national economy for a person who had to lie down or sleep four to six hours in an eight-hour work day, or who had to be off task 40% of the day in addition to normal breaks.  The vocational expert also testified that a person who had to miss two or more days of work per month was not able to work.  The ALJ asked the vocational

5

expert about a hypothetical individual of Flowers's age and with his education and work experience who could perform work at the sedentary exertional level with occasional pushing and pulling with arms and legs; occasional climbing of ramps and stairs but no climbing of ropes, ladders, or scaffolds; occasional balancing, kneeling, crouching, or stooping, but no crawling; and frequent reaching, including occasional overhead reaching.  The ALJ added that the hypothetical individual should avoid concentrated exposure to extreme heat and cold, vibrations, and humidity, as well as hazardous machinery or unprotected heights.  He would be able to understand and remember short and simple instructions, perform simple and routine repetitive tasks, and deal with occasional, well-planned workplace changes, but could not read instructions or reports or perform mathematical calculations.  The vocational expert testified that such an individual could not perform any of Flowers's past work, but that work existed within those limitations in the national or regional economy, including positions as an assembler, inspector, or hand loader.

The ALJ determined that Flowers was not disabled because he could still perform a limited range of sedentary work, including jobs that existed in sufficient numbers in the national economy.  In making the disability determination, the ALJ gave Dr. Hartzog's opinions little weight, finding that his opinions were not supported by his treatment notes or his discussion of Flowers's subjective

6

complaints.  The ALJ also gave limited weight to Dr. Warren's responses on the physical capacities form, finding that the responses were inconsistent with Dr. Warren's own diagnostic impressions following his physical examination of Flowers.  The ALJ gave more weight to Dr. Warren's physical examination findings, which the ALJ considered to be more consistent with Dr. Iyer's findings and the medical evidence of record.  The ALJ gave significant weight to Dr. Iyer's opinions, finding that they were consistent with the medical evidence of record.

Flowers filed a complaint for review of the denial of benefits in federal district court.  The district court affirmed the agency's decision, and Flowers now appeals.

## II.

In Social Security cases where the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Our review is 'the same as that of the district court,' meaning we neither defer to nor consider any errors in the district court's opinion."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (internal citations omitted).

We review a Social Security case to "determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). We will affirm the Commissioner's decision if we conclude, upon consideration of the record as a whole, that substantial evidence supports it. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Under this standard of review, we "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178 (alteration in the original) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

## III.

To qualify for Social Security benefits, a claimant must show that he is disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty*, 245 F.3d at 1278. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Social Security regulations outline a five-step process that the ALJ must use to determine whether a claimant is disabled. During this process, the ALJ considers (1) the claimant's work activity, (2) the medical severity of the claimant's impairments, (3) whether any impairment or combination of impairments is equivalent to an impairment listed in the regulations, (4) the claimant's residual functional capacity and his ability to perform his past relevant work, and (5) if the claimant cannot perform past relevant work, whether he can perform other work found in the national economy based on his residual functional capacity and commensurate with his age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Phillips*, 357 F.3d at 1237–38. If, as the ALJ found here, the claimant does not meet the requirements for any listed impairment and can perform other work, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g)(1); 416.920(a)(4)(v) & (g)(1).

Flowers focuses on the ALJ's determination that he has the residual functional capacity to perform a limited range of sedentary work. His sole argument on appeal is that the ALJ failed to give sufficient weight to Dr. Hartzog's opinions about his work limitations and failed to give adequate reasons for assigning less weight to those opinions.

At step four, the ALJ must "'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other

9

evidence' in the case." *Phillips*, 357 F.3d at 1238 (alteration in the original) (quoting 20 C.F.R. § 404.1520(e)).  A claimant's residual functional capacity is "the most [he] can still do despite" the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ must give the opinion of a claimant's treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis*, 125 F.3d at 1440 (citation omitted).  Good cause exists where (1) the treating physician's opinion was not reinforced by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  The "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179.

Here, the ALJ articulated adequate reasons for giving Dr. Hartzog's opinions less weight.  The ALJ's decision stated that Dr. Hartzog's opinions were "not supported in his treatment notes and is [sic] discussion of the claimant's subjective complaints."  Dr. Hartzog's treatment notes documented Flowers's continued complaints of joint pain and back and neck pain, and on one occasion—the date that Dr. Hartzog completed the physical capacities form—Flowers complained of pain that he rated as an 8 out of 10.  Otherwise, however, Dr. Hartzog did not make any notations regarding the severity of Flowers's pain complaints, and his physical examination findings showed that Flowers had no sensory or motor deficits and

only mild limitations in his lumbar spine flexion.  Moreover, Dr. Hartzog attributed Flowers's chronic pain to his car accident injury, which was described as mild in contemporaneous treatment records and imaging reports.  And Dr. Hartzog's treatment plan—pain medication and home exercises—did not reflect the dire situation described in his physical capacities report.

"We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).  We conclude that the ALJ articulated legitimate reasons for discounting Dr. Hartzog's opinions about Flowers's physical limitations, and that substantial evidence supports the ALJ's disability determination.  We therefore affirm.

**AFFIRMED.**