[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 20-12121

Non-Argument Calendar

————————————————

GRETA ANN BELSER,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-00870-LSC

————————————————

Before JORDAN, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Greta Ann Belser appeals *pro se* the District Court's order affirming the Social Security Commissioner's ("Commissioner") denial of her claim for a period of disability and disability insurance benefits ("DIB"). On appeal, she argues that the Administrative Law Judge ("ALJ") erred in selecting a different onset date from her alleged onset date and that medical records supported a determination that she was disabled beginning in September 2016 rather than January 2018. She also claims various other instances of error support reversal, such as the ALJ not asking a Vocational Expert ("VE") to testify at Belser's disability hearing or the Commissioner accidentally writing a date as "2019" instead of "2018" in a brief to the District Court. As we find that the ALJ's determination was supported by substantial evidence and that Belser's other arguments are meritless, we affirm the judgment of the District Court.

I.

Belser is a fifty-five-year-old woman previously self-employed as a real estate agent. On January 12, 2018, Belser filed an application for a period of disability and DIB as a result of knee problems, chronic sinusitis, high blood pressure, high cholesterol, and possible heart and back problems. The Social Security Administration ("SSA") determined that Belser was disabled beginning on January 1, 2018, but not before that date. Belser requested a hearing before an ALJ to challenge the onset date of her disability; she claimed that the became disabled on September 26, 2016.

The hearing occurred on November 7, 2018, before an ALJ and with a VE, Joann Hayward, available to testify on the phone.

The medical records introduced during the hearing established the following timeline.

*A.*

On September 22, 2016, Belser visited Alabama Regional complaining of nausea. Belser admitted to taking heroin for two months and then taking Lortab pills to wean her from the heroin. The examination that followed revealed Belser had stable hypertension and no ambulation issues.  Belser was diagnosed with benign essential hypertension, drug abuse, nausea, and knee pain, and then prescribed Mobic for her knee pain.

In November 2016, Belser presented to St. Vincent's East's emergency room complaining of cough and upper respiratory infection ("URI") symptoms. Belser reported no other symptoms, and the nursing assessment produced all normal findings including normal ambulatory status, intact range of motion for all extremities, and no muscle weakness.  Belser was treated for URI symptoms and discharged the same day.  She returned to St. Vincent's on December 5, 2016, complaining of sinus congestion and hypertension, and was found to have only a loose cough. During that visit, Belser was also found to have normal ambulatory status, intact range of motion for all extremities, and no muscle weakness. She was discharged that same day.

On December 22, 2016, Belser returned to Alabama Regional for a routine checkup for hypertension. She stated that she had continuing sinus issues and that her hypertension was doing well with her current medications. An examination showed fluid in her middle ear and nasal congestion with otherwise normal findings. She was diagnosed with benign hypertension and chronic rhinitis and was advised to monitor her diet and exercise.

She returned to St. Vincent's in January 2017 with complaints of sinus congestion.  She reported her hypertension disorder, and the nursing assessment revealed generally normal findings, including normal ambulatory status, intact range of motion for all extremities, and no muscle weakness.  She returned again on February 27, 2017, with complaints of vomiting, stating that she had food poisoning. The nursing assessment that followed once more revealed normal ambulatory status, intact range of motion for all extremities, and no muscle weakness.

Belser returned to St. Vincent's in April and May of 2017, complaining of sinus congestion, and reporting only her hypertension disorder. She returned again in July and August 2019 with the same complaints. The nursing assessments for the July and August visits found Belser had normal ambulatory status, intact range of motion for all extremities, and no muscle weakness.

Belser presented to Alabama Regional in September 2017 with complaints of head congestion and a cough. An examination revealed that she had nasal drainage but otherwise normal findings. She was advised to lose weight and exercise.

In November 2017, Belser returned to St. Vincent's with congestion. An exam revealed a red throat but noted that she was otherwise well developed, well nourished, and in no acute distress.

Belser applied for disability benefits on January 12, 2018. On March 5, 2018, Dr. David Gordon conducted a consultative examination of Belser. During the examination, Belser presented Gordon with complaints of bilateral knee pain for twenty-five years, low back pain for twenty-one years, spring allergies, and shortness of breath when walking twenty to thirty feet. She denied seeing an orthopedist for her knee issues in the last twenty-

three years. Belser stated that she had been working as a real estate agent and that she had a small closing in January 2018.

On exam, Belser's lungs were clear. She displayed a slow, waddling gait, an inability to heel/toe walk, and an inability to squat. She had a decreased range of motion of the dorsolumbar spine and in her bilateral hips and knees. She had normal range of motion in her shoulders, wrists, cervical spine, and ankles. Belser had a lumbosacral area and tender knees bilaterally. Her straight leg raising tests were negative and she had full 5/5 hip, knee, and grip strength. An x-ray of the right knee showed mild valgus deformity, medical compartment narrowing, moderate osteophytes on the tibial plateau, and large osteophytes on the distal femur. Gordon's final impression for Belser was osteoarthritis in her right knee with arthroscopic repair in 1995, probable moderate to severe osteoarthritis in the left knee, moderate osteoarthritis in the lumbar spine, hypertension, and intermittent acute bronchitis.

The next day, state agency medical consultant Dr. Marcus Whitman reviewed the available evidence, including Dr. Gordon's report, and issued an opinion on Belser's functional limitations. Dr. Whitman opined the following. Belser could occasionally lift ten pounds and frequently lift less than ten pounds, could stand and/or walk for three hours and sit for six hours in an eight-hour workday, and could push/pull an unlimited amount, except as limited by her ability to lift and carry. Belser could occasionally climb ramps/stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl. Belser should avoid concentrated exposure to extreme heat or cold, humidity, and vibrations, and should avoid all exposure to hazards such as machinery and/or heights. Dr. Whitman concluded that Belser did not become disabled until January 1, 2018, based on the objective

evidence from Belser's medical appointments in 2016 and 2017 showing normal musculoskeletal assessments and a normal gait until that point.

On March 24, 2018, Belser returned to St. Vincent's emergency department complaining of nausea and vomiting after stopping heroin usage six days earlier. She also complained of URI symptoms and stated that she had been using heroin daily for the past year. A physical examination revealed mostly normal findings except her mild congestion and nasal discharge. Her back was nontender and she had normal musculoskeletal range of motion and strength. A physician, Dr. George Turnley, diagnosed her with acute narcotic withdrawal, anxiety, hypertension, morbid obesity, and polysubstance abuse. She was discharged with medications for her withdrawal and was advised to remain off illicit drugs.

In the function report Belser submitted as part of her initial DIB application, Belser stated the following. Belser lived in a house with her son, who did not require her physical assistance. She started her day with a shower and breakfast, then checked her emails and returned calls. She had a small pet which she could care for alone, but had difficulty putting on pants, and she could not stand for long in the shower. However, Belser had no problem using the bathroom or feeding herself, being able to prepare simple meals. Belser could also do light housework such as dusting and cleaning and could drive and go out alone. Belser shopped on her computer, read, watched TV, and talked to friends on the phone, but could not perform outside activities.

B.

On November 7, 2018, the ALJ held a hearing to determine Belser's initial onset date after Belser challenged the SSA's initial

determination of January 1, 2018. Belser attended the hearing with counsel; also present at the hearing was a VE, Joann Hayward.[1] At the hearing, Belser's attorney described why she thought her initial onset date for her disability should be September 26, 2016, not January 1, 2018. The remainder of the hearing consisted of Belser testifying that she experienced much greater pain and more limited mobility in late 2016 and 2017 than her regular hospital visits during period indicate.

In January 2019, the ALJ issued his decision. He found that Belser was not disabled from September 26, 2016, to December 31, 2017, after which she was disabled. While the ALJ found that Belser suffered from obesity and hypertension from September 26, 2016, onwards, the ALJ determined that Belser had the residual functional capacity ("RFC")[2] during that period to perform the full range of light work necessitated by her job as a real estate agent. The ALJ came to this determination while performing the five-step disability evaluation process per SSA regulations. *See*

---

[1] Hayward was not physically present and appeared via telephone, as noted by the ALJ at the beginning of the hearing. Courts may occasionally allow parties or witnesses to appear by telephone for certain hearings. *See* Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."). SSA ALJs implicitly have this authority as well, so long as they ensure sufficient procedural due process. *See* 20 C.F.R. § 498.204(b)(8) (ALJs may "[r]egulate the course of the hearing and the conduct of representatives, parties, and witnesses"); *see also Beltran-Tirado v. I.N.S.*, 213 F.3d 1179, 1185–86 (9th Cir. 2000) (denying an immigrant's claim that a telephonic appearance by a witness at her immigration hearing denied her due process).

[2] A disabled person's RFC measures their capacity to engage in functional activities or tasks despite their physical and/or mental limitations.

*infra* part III.A. Once the ALJ determined, at step four, that Belser's RFC indicated she could continue to work as a real estate agent until January 1, 2018, he concluded the five-step disability evaluation and found Belser was not disabled. The ALJ explicitly discounted Belser's testimony about her symptoms at the hearing,[3] instead relying on the medical evidence from Belser's regular check-ups and the opinions of Drs. Gordon and Whitman.

According to the ALJ, the evidence shows that Belser was fully independent in her daily activities, including personal care, meal preparation, light housework, and pet care. Belser could drive, shop, use the internet, manage finances, read, watch TV, and walk without assistance. Furthermore, she continued to work during the period Belser claims she was disabled, conducting real estate closings in September 2017 and January 2018. As Belser was capable of continuing to work as a real estate agent from September 26, 2016, to December 31, 2017, the ALJ determined that she could not have been disabled during that time. Belser appealed the ALJ's decision to the Appeals Council; on May 11, 2019, the Appeals Council denied her request for review.

*C.*

Belser then filed a complaint in the District Court *pro se* seeking review of the Commissioner's denial of her claim for DIB

---

[3] The ALJ found that while Belser's impairments could reasonably be expected to cause some of the symptoms Belser alleged during her testimony at the hearing, the alleged severity of her symptoms was not consistent with either the medical evidence or Belser's own statements concerning her capabilities at the time. No treating, examining, or reviewing doctor indicated that Belser was disabled during the period she alleged, and her testimony does not match the records of her regular check-ups during that period. Therefore, the ALJ chose to discount Belser's testimony about her symptoms.

from September 26, 2016, to December 31, 2017. Belser argued that the ALJ failed to review the evidence and consequentially the ALJ's selected onset date was unsupported by the evidence. Belser also made a variety of miscellaneous claims. Belser argued that the ALJ falsely stated that a VE was present at the hearing; that the hearing was rushed; that a SSA employee sexually harassed her by sending her a text stating "Hey birthday girl;" that a letter from her doctor not introduced into evidence before the ALJ demonstrated her disability; that an entire conversation not included in the transcript occurred between her and the ALJ; that exhibits not introduced into evidence before the ALJ from a surgery Belser had in 1997 on her knees demonstrated her disability; that her emergency room visits were not examinations by a doctor and so could not serve as a basis for determining disability; that she was unable to work during the claimed period; that the ALJ should have objected to her statements regarding her ability to work at the hearing if he disagreed with them; that the time of her hearing was changed shortly before the start of the hearing; and that a letter from a Dr. Norman Huggins stated it was impossible to develop her disability within ninety days, among other arguments.

The magistrate judge then issued a report and recommendation ("R&R") recommending affirming the Commissioner's decision. The magistrate concluded that the ALJ's decision that Belser could continue to work as a real estate agent until January 1, 2018, was based on substantial evidence. Therefore, Belser was not disabled until January 1, 2018. The magistrate judge further found that Belser's remaining objections were either harmless error, irrelevant, or otherwise did not require reversal.

Belser objected to the R&R, arguing that the R&R inaccurately quoted the ALJ and disagreed with the medical evaluation showing her disability. She argued that a VE was required to attend her hearing and that there was no proof that Hayward was invited to the hearing. She argued that she could not do her job as a real estate agent with her disability because she could not enter the homes to show them. She argued that the ALJ should have addressed the chosen onset date and that her condition did not occur spontaneously. She argued that the ALJ did not properly conduct the five-step evaluation. She noted that the Commissioner listed an incorrect date on its response in the District Court. The District Court adopted the R&R and affirmed the Commissioner's decision.

Belser then filed a notice of appeal to this Court and included in the notice new evidence in the form of a note from a Dr. John Young of Brookwood Baptist Health stating that Belser's knee problems dated back to 1997.

## II.

When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review de novo the legal principles upon which the ALJ based his decision but review the resulting decision to determine whether it is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "We may not decide the facts anew,

reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original)).

### III.

On appeal, Belser argues that the ALJ erred by selecting a "random" onset date for her disability and that the ALJ failed to evaluate the record as a whole when determining whether she could perform light work. As she did in the District Court below, Belser also makes a variety of other arguments she claims supports reversal. Among these, she argues that the Commissioner's brief before the District Court contained an error stating that she filed for disability in January 2019 rather than January 2018; that there was no VE present at her hearing and that the record incorrectly reflects the VE's presence; that the VE should have testified; that the ALJ was biased against her and held a whole conversation with her off the record; that the ALJ incorrectly applied the five-step disability application; and that this Court should consider evidence showing her disability that she did not offer to the ALJ, such as Dr. Young's report, Dr. Huggin's letter, and her 1997 surgery records.

In subpart A, we set forth the law concerning review of Social Security disability hearings. In subpart B, we review the ALJ's decision. In subpart C, we address the various other claims and evidence Belser raised both in the District Court and on appeal.

### A.

An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The mere diagnosis of a medical impairment is insufficient, as it does not reveal the extent to which the impairment limits the claimant's ability to work. *Moore*, 405 F.3d at 1213 n.6.

Social Security regulations establish a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(1). Throughout the process, the burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. 20 C.F.R. § 416.920(a)(4).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. § 416.920(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." § 416.920(a)(4)(ii). Next, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. § 416.920(a)(4)(iii). Where, as here, the ALJ finds that the claimant's severe impairments do not meet or equal a listed impairment, the ALJ must then determine, at step four, whether she has the RFC to perform her past relevant work. § 416.920(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must then determine, as step five, whether the claimant's RFC permits her to perform other work that exists in the national economy. § 416.920(a)(4)(v). It is during this fifth step that the testimony of a VE may be helpful in determining what existing jobs may fit a claimant's RFC. Finally, the burden shifts back to the claimant to

prove she is unable to perform the jobs suggested by the Commis-sioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

For claims filed on or after March 27, 2017, the agency does not defer to or give specific evidentiary weight to any medical opin-ion. § 416.920c(a). The agency "will articulate" how it considered the opinion and its determination of how persuasive it found each. § 416.920c(a)–(b). When considering the medical opinions, the ALJ considers the following factors: (1) whether the objective medical evidence and explanations are supported by the source's medical opinions; (2) whether the medical opinions are consistent with other evidence; (3) the source's relationship with the claimant; (4) whether the source was a specialist; and (5) "other factors" that support or contradict a medical opinion. § 416.920c(c). Addition-ally, the regulations do not require the ALJ to recontact or seek additional information from medical sources. § 416.912(e).

To show a disability based on subjective symptom testi-mony, the claimant must satisfy two parts of a three-part test show-ing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the al-leged pain, or (b) that the objectively determined medical condi-tion can reasonably be expected to give rise to the claimed symp-toms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Id.* In evaluat-ing the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evi-dence, the claimant's history, and statements of the claimant and her doctors. 20 C.F.R. § 404.1529(c)(1)–(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the lo-cation, duration, frequency, and intensity of the claimant's pain or

other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence and consider whether there are any inconsistencies or conflicts between those statements and the record. § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to her subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). This Court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562

We have held that an ALJ can consider daily activities at the fourth step of the sequential evaluation. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Work done during any alleged period of disability may show the claimant is able to work at the substantial gainful activity level. § 404.1571. Even if the work done was not substantial gainful activity, it may show that the claimant was able to do more work than she actually did. *Id.* A claimant is not disabled if they can perform their past relevant work. *See Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). This Court has held that, when an ALJ concludes that the claimant was capable of

performing her past relevant work, testimony from a VE is not necessary. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990).

Appellate review is limited to the certified record; any evidence attached as an appendix to a brief is not properly before this Court. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). Moreover, evidence submitted to the District Court may be considered only to determine if remand is warranted under sentence six of 42 U.S.C. § 405(g). *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267–68 (11th Cir. 2007). To satisfy the criteria for a remand under sentence six of 42 U.S.C. § 405(g), a claimant must establish that: (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable possibility exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *See Caulder v. Bowen*, 791 F.2d 872, 876–77 (11th Cir. 1986).

This Court generally does not consider arguments raised for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004). Furthermore, the failure to object to an R&R waives the right to challenge on appeal a district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. 11th Cir. R. 3–1. In the absence of a proper objection, however, we may exercise our discretion and review on appeal for plain error if necessary in the interests of justice. *Id.* For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002). Where the explicit

language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

*B.*

Here, substantial evidence supports the ALJ's determination that Belser was not disabled during the period at issue, September 26, 2016, to December 31, 2017. First, the ALJ's determination of Besler's RFC during that period as being limited to light work was supported by the record. Specifically, treatment records from the period showed that Besler's primary complaint on September 22, 2016, was nausea, and her secondary complaint was for knee pain, for which she received pain medication. A physical examination at this time showed stable hypertension and no issues with ambulation. Further, in the records from November and December 2016, Belser did not complain of knee pain and had normal physical examinations, showing normal ambulatory status, full motion for all extremities, and no muscle weakness. The treatment records from St. Vincent's between November 2016 and March 2018 routinely showed that Belser was found to have non-tender extremities, normal range of motion, and normal ambulatory status. Accordingly, the objective medical records from the period at issue provided no evidence that Belser was disabled or could not perform light work.

The ALJ also properly evaluated Belser's subjective complaints. He articulated adequate reasons for not giving full weight to Belser's testimony that she could not continue working as a real estate agent due to her pain and inability to ambulate since September 2016. Namely, the ALJ cited the fact that no treating, examining, or reviewing doctor indicated that Belser could not perform work-related activities during the period at issue and that the

medical records from that time showed routine follow-ups, treatment of her symptoms, and medication management. These reasons were supported by substantial evidence, as discussed above. Further, the ALJ properly found that the activities Belser retained during that time did not support a finding of disability. According to Belser's own statement, she was able to shower, feed herself, care for her pet, clean her home, drive, go out alone, shop, read, and watch TV. The ALJ was permitted to consider these statements when deciding whether Belser was capable of light work during that period. 20 C.F.R. § 404.1529(c)(3); *Macia,* 829 F.2d at 1012. It was also relevant that Belser continued to work as a real estate agent during the period at issue, performing real estate closings in September 2017 and January 2018. The ALJ was permitted to consider Belser's work activity after her alleged onset date and that activity can show that Belser was able to do more work than she actually did. 20 C.F.R. § 404.1571.

Further, the ALJ's consideration of Dr. Whitman's March 2018 opinion that Belser was disabled beginning on January 1, 2018, was appropriate because the ALJ articulated the evidence supporting the opinion. Specifically, the ALJ found Dr. Whitman's opinion was well supported by the weight of the evidence for the period following the period at issue, including treatment records, Dr. Gordon's report, and 2018 x-ray results that for the first time objectively confirmed osteoarthritic changes in the bilateral knees and lumbar spine. Substantial evidence supported the ALJ's decision to give weight to Dr. Whitman's opinion because Belser's treatment records show normal musculoskeletal findings during the period at issue and few complaints of knee pain, as discussed above. Dr. Gordon's assessment also supports Dr. Whitman's findings given that the x-rays taken by Dr. Gordon in March 2018 were the first

instance of objective imaging showing Belser's knee condition, and her knee pain was being managed with pain medication beginning in September 2016. Accordingly, the ALJ's determination that Belser was not disabled during the period at issue from September 26, 2016, to December 31, 2017, was supported by substantial evidence.

Based on the evidence as discussed above, the ALJ's determination that Belser's onset date was January 1, 2018, was not "random," as Belser argues, but rather supported by the medical evidence of record. Belser did not provide evidence that she was disabled beginning on September 26, 2016, and therefore she did not meet her burden. *Ellison*, 355 F.3d at 1276.

## C.

Belser also argues on appeal that remand is appropriate due to the Commissioner misstating the date of her application in its brief before the District Court. As the Commissioner concedes on appeal, it did mistakenly state that Belser filed for disability on January 30, 2019, instead of January 12, 2018. However, this mistake did not impact the outcome of Belser's claim because the ALJ and the District Court both correctly stated Belser's application date.

Belser argues at length that no VE was present during her hearing before the ALJ, but the record shows otherwise. The transcript clearly stated that Hayward appeared by telephone and was available to testify if needed. The transcript showed that Belser acknowledged Hayward's presence. Belser, who was represented by counsel, made no objections during the hearing regarding the lack of VE testimony. Further, VE testimony was not required during the hearing because the ALJ found that Belser could return to her past work as a real estate agent, at step four of the analysis. We

have held that the ALJ is not required to elicit VE testimony at that stage of the analysis. *Lucas*, 918 F.2d at 1573 n.2.

To the extent Belser argues on appeal that the ALJ was prejudiced or biased against her, this argument was not raised before the District Court and accordingly, this Court need not consider it. *Access Now, Inc.*, 385 F.3d at 1331–32. Belser argues that a conversation took place with the ALJ that was not recorded for the transcript of her hearing, but she failed to object to the magistrate judge's recommendation that this argument was without merit so the argument should be reviewed for plain error. 11th Cir. R. 3-1. Belser does not argue how this conversation impacted the ALJ's determination and therefore cannot show that any error occurred.

Belser also argues that the ALJ improperly proceeded through the five-step evaluation, but fails to point to any error in the ALJ's reasoning. The ALJ properly evaluated the medical evidence of record and did not, as Belser argues, fail to give weight to any particular opinion of a treating physician. Belser also argues that the Commissioner misconstrued a visit with an intake clerk in an emergency room as with a licensed physician, but the ALJ properly characterized treatment records from St. Vincent's as documenting non-tender extremities, normal musculoskeletal range of motion, normal motor status/ability, and normal ambulatory status during the period at issue.

Next, we turn to Belser's argument that we should consider evidence not presented to the ALJ. Belser points to treatment records from Dr. Young to support her argument that her onset date should have been September 26, 2016. These records were not before either the ALJ or the District Court as they were submitted as an attachment to Belser's notice of appeal. Accordingly, this Court's review, which is limited to the certified record, may not

include these documents. *Wilson*, 179 F.3d at 1279. Further, even if this evidence was before the District Court, it should not be considered because it does not warrant remand under 42 U.S.C. § 405(g). Assuming that the evidence is new and noncumulative and Belser could not have submitted it at the administrative level, the evidence is not material such that a reasonable probability exists that it would change the administrative result. *Caulder*, 791 F.2d at 876–77. The records from Dr. Young state that Belser's knee issues became progressively worse over time, but it did not provide evidence of Belser's functional limitations during the period at issue, given that the examination took place in 2020, three years after the period in question ended.

Furthermore, Belser did not raise any argument on appeal regarding Dr. Huggins's letter as evidence for the District Court to consider. Also, to the extent Belser argues on appeal that the photographs of her 1997 knee surgery should be considered even though they were not before the ALJ, this argument should be reviewed for plain error as Belser did not object to the magistrate judge's recommendation that this argument failed. 11th Cir. R. 3-1. The photographs were not material such that a reasonable probability exists that they would change the administrative result because they merely showed that a surgery occurred and did not provide any evidence regarding Belser's abilities during the period in question. Further, Belser has not shown that the District Court's decision not to consider the photographs from her 1997 knee surgery constituted plain error because she did not point to any precedent from the Supreme Court or this Court directly resolving it. *Lejarde-Rada*, 319 F.3d at 1291.

## IV.

In summary, the ALJ's decision that Belser was not disabled during the period at issue, September 26, 2016, to December 31, 2017, was supported by substantial evidence and none of Belser's arguments warrant remand. Accordingly, the District Court's judgment is

**AFFIRMED.**